*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re EDEN, Minors.

UNPUBLISHED
February 17, 2022

No. 357771
Oakland Circuit Court
Family Division
LC No. 2019-872721-NA

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and CAMERON, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his minor children, AM and JM, under MCL 712A.19b(3)(c)(*i*), (g), and (j).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is the father of AM and JM. In 2018, respondent was convicted of domestic violence, third offense, MCL 750.81(5), for physically abusing the children's mother, and was imprisoned. In May 2019, the Michigan Department of Health and Human Services (DHHS or petitioner) filed a petition requesting that the trial court exercise jurisdiction over the children. The petition alleged in pertinent part that respondent was incarcerated for domestic violence and was unable to care or provide for the children. The petition alleged that respondent's earliest release date was June 19, 2020. The trial court authorized the petition. At a preliminary hearing, the trial court indicated that it would refer the matter to a family court referee for a pretrial hearing, unless either respondent or the children's mother demanded that the proceedings be held before a judge. Both respondent and the children's mother assented to the pretrial being held before a referee.[2]

---

[1] The children's mother was a respondent in the proceedings below, and her parental rights were also terminated. She is not a party to this appeal.

[2] A respondent in a child protective proceeding may demand a jury trial for the adjudication phase. See *In re Sanders*, 495 Mich 394, 405–406; 852 NW2d 524 (2014); see also MCR 3.911(A). Further, a respondent may demand that a judge rather than a referee preside over hearings and

At the pretrial hearing, respondent entered a plea of admission to the allegations that he was incarcerated for domestic violence and unable to care for or provide for the care of his children. The referee recommended that the trial court exercise jurisdiction over the children, and the trial court did so. The children were initially placed with their maternal grandmother, but later were placed with respondent's brother and the brother's wife. Respondent was ordered to participate in a parent-agency treatment plan. While in prison, respondent complied with his treatment plan and participated in several services, including completing programs aimed at addressing domestic violence and substance abuse as well as participating in Alcoholics Anonymous and Narcotics Anonymous.

Respondent was paroled in March 2020. At a July 2020 review hearing, the foster care worker, Shelby Marion-Bennett (Marino-Bennett) testified that respondent had missed some drug screens and had tested positive for THC (the active ingredient in marijuana) on July 14. Marino-Bennett testified that respondent was being drug-tested on a monthly basis by his parole officer and had been testing negative. In October 2020, respondent was arrested for parole violations and reincarcerated.[3] Marino-Bennett testified that respondent had not completed any additional drug screens for this case since July 14. Further, respondent had tested positive for cocaine, methamphetamine, and THC twice. Respondent had not provided any proof of income to Marino-Bennett or his parole officer. Respondent had failed to schedule a home assessment and had not attended the parenting classes or substance abuse treatment for which he had been referred. Respondent had refused to sign a release for his medical records related to a recent hospitalization. Respondent had participated in some supervised visits with the children. Marino-Bennett described respondent as being in "full non-compliance" with every area of his treatment plan except visitation.

The referee recommended that the goal be changed from reunification to adoption, and in November 2020 petitioner filed a supplemental petition seeking termination of respondent's parental rights. At a review hearing in January 2021, the children's foster care worker, Kara Schaeffer, testified that respondent rarely communicated with her.

At the termination hearing before the referee in February 2021, respondent's parole officer testified to the details of respondent's parole violations. Respondent had been sentenced to 180 days in jail for the parole violations and a four-month extension of his parole period after his release. His expected release date was April 19, 2021. Marino-Bennett testified that respondent had never enrolled in parenting classes, had four unexcused absences for supervised visitation, and had never provided proof of suitable housing or income. Further, although he completed an

---

nonjury trials. See MCR 3.912; MCR 3.965(B)(7). If a party has not demanded a trial by jury or a judge, "a referee may conduct the trial and further proceedings through disposition." See MCR 3.913.

[3] Respondent's parole violations involved an incident in which respondent was stopped by police while driving a vehicle and was found to be driving without a license, as well as in possession of methamphetamine and a controlled prescription medication without a valid prescription. Respondent was given a drug screen in jail and tested positive for cocaine, methamphetamine, THC, and amphetamines.

inpatient substance-abuse treatment program in October 2020, respondent had subsequently tested positive for controlled substances, and had never completed a substance abuse assessment so that he could be referred for outpatient treatment. Marino-Bennett also noted that a condition of respondent's treatment plan was compliance with the terms of his parole. Respondent admitted that he had not complied with his treatment plan in the past, but stated that he was then on medication and could comply going forward. The referee found that statutory grounds for termination of respondent's parental rights had been proven under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (3)(g) (failure to provide proper care or custody), and (3)(j) (likelihood of harm).

A best-interest hearing was held over two days in May 2021. Marino-Bennett testified at the hearing that JM was in trauma-focused therapy related to "the domestic violence between his dad and his mom, a lot of arguing and fighting" that he had witnessed, and had expressed that he did not want to go home because "he's been hit there." AM had also told her therapist about witnessing domestic violence at home. At the conclusion of the hearing, the referee noted that despite the fact that the children had been placed in relative care, which weighed against termination, the evidence overall showed that termination was in the children's best interests. The referee stressed that the children had been living with the foster parents for 18 months in a stable and loving environment, and that it was not in the children's best interests to continue to wait indefinitely for parental reformation or rehabilitation. The referee found that the foster parents were willing to adopt the children, and had been able to provide them with the resources, support, and love that they required, which was in stark contrast to what respondent and the children's mother could provide. The referee found that termination of respondent's parental rights was in JM and AM's best interests, and recommended that the trial court terminate respondent's parental rights. The trial court did so in a subsequent order.

This appeal followed.

## II. VALIDITY OF PLEA

Respondent argues that his plea at the adjudication was not knowingly, freely, and voluntarily made, and that the trial court therefore erred by accepting it. We disagree.

Because respondent never challenged the validity of his plea or moved to withdraw his plea in the trial court, this issue is unpreserved. See *In re Pederson*, 331 Mich App 445, 462; 951 NW2d 704 (2020). We review unpreserved issues for plain error affecting substantial rights. *Id*. at 463. In order to show plain error, respondent has the burden to show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the error affected a substantial right. *Id*., citing *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

At the adjudicative phase of a child-protective proceeding, the trial court determines whether to take jurisdiction of the child. *Pederson*, 331 Mich App at 464. "The fact-finding adjudication of an authorized petition to determine if the minor comes within the jurisdiction of the court is called a 'trial.' " *Id*. (citation and some quotation marks omitted). As with other rights, a respondent may waive his right to a trial and admit the allegations in the petition. *Id*. "Waivers

of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id*. (quotation marks and citation omitted). See also MCR 3.971(C)(1) ("The court shall not accept a plea of admission or of no contest without satisfying itself that the plea is knowingly, understandingly, and voluntarily made."). In the context of jurisdictional pleas in child-protective proceedings, the Michigan court rules reflect this due-process guarantee. *In re Ferranti*, 504 Mich 1, 21; 934 NW2d 610 (2019).

Respondent argues that he was not fully informed of what was happening at the pretrial hearing and felt pressured to submit his plea. The record does not support respondent's claim. At one point prior to his plea of admission, respondent did express frustration with the proceedings, stating that he had been asking for discovery, yet nothing had been provided. In response, the court explained that the time for discovery had not yet begun. Specifically, the court noted that the only filing in the case so far was the petition, which respondent admitted having received. When the court asked respondent if he wanted to proceed on that day, he answered, "Yes." Further, respondent admitted to understanding (1) the allegations against him, (2) that a lawyer would be appointed to represent him if he could not afford one, (3) his right to a trial by judge or jury, (4) that the petitioner must prove the allegations in the petition by a preponderance of the evidence, (5) that he had the right to cross-examine any witnesses called against him at a trial, (6) that he had the right to call his own witnesses at a trial, (7) that by having the court accept his plea, he would be giving up those rights, (8) that the court may then find that the children are within its jurisdiction, and (9) that any plea may be used against him in a future proceeding to terminate parental rights.

During the referee's recitation of the rights that respondent would be waiving, respondent voiced confusion over his earlier waiver of the right to proceed before a judge or jury:

> *THE COURT*: You understand you have the right to a trial by a Judge or jury?
>
> *MR. EDEN*: Yes.
>
> *THE COURT*: That was gone over at the preliminary hearing.
>
> *MR. EDEN*: So I -- (undecipherable) -- discovery -- (undecipherable).
>
> *THE COURT*: The preliminary hearing you were asked if you wanted a Judge or a jury and you declined at that point.
>
> *MR. EDEN*: Okay, but I didn't know I declined it at that point, but.
>
> *THE COURT*: Well, the referee reports going over it with you both.
>
> *MR. EDEN*: Okay.
>
> *THE COURT*: And at this point you're not automatically entitled to a Judge or jury because you did not make that request at the prelim.

*MR. EDEN*: Okay. I'm making a request now for an appeal. Obviously -- (inaudible).

*THE COURT*: I'm not --

*MR. EDEN*: (Inaudible) -- if I could get appeal forms, because I didn't know that I had a right to that.

*THE COURT*: You don't have the right to an appeal at this point.

*MR. EDEN*: Okay.

*THE COURT*: I'm not understanding what you're saying, Sir.

*MR. EDEN*: Well, a lot of this is by phone and I don't really know what's going on. It's hard to hear a lot of stuff and I'm -- I feel like I'm not being represented adequately.

*THE COURT*: Okay, then we'll just set it for trial. Mr. Lamb [respondent's attorney] has been here --

*MR. EDEN*: No, I'm gonna -- I'm -- (undecipherable) -- all of that, I don't want -- I don't want to set it for trial, I just thought that I was entitled to more than what I'm getting. I do remember waiving it at the prelim. [Respondent-mother's responses omitted.]

Despite respondent initially expressing some confusion about whether he had waived his right to trial by judge or jury, he ultimately indicated that he remembered waiving it and clearly stated that he did not want the matter to be set for trial. There is no basis on this record on which to conclude that respondent's plea was not knowingly made.

Further, the record does not support respondent's claim that his plea was not made voluntarily. Although respondent asserts that he "wilted" in response to the referee saying that she would set the matter for trial, he does not explain how the referee's response somehow coerced respondent into requesting the opposite. Respondent's options were to enter a plea or have the matter set for trial. The referee stated her willingness to set the matter for trial if respondent preferred to do so. Furthermore, respondent answered in the negative when asked whether anyone had forced him, threatened him, or promised anything to him in return for his plea. Respondent has failed to show that his plea was not voluntarily made.

In sum, respondent has failed to demonstrate plain error affecting substantial rights in the referee's acceptance of his plea of admission. *Pederson*, 331 Mich App at 463.

### III. DUE PROCESS

Respondent also argues he was denied his right to due process of law because he was prevented from participating in three hearings. We disagree. To the extent that there was any

error, respondent has failed to show that his substantial rights were affected, i.e., that the outcome of these proceedings would have been any different.

Because respondent never raised this due-process issue in the trial court, the issue is not preserved, see *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011), and our review is for plain error affecting substantial rights, *Pederson*, 331 Mich App at 463.

"The fundamental requisite of due process of law is the opportunity to be heard." *In re Rood*, 483 Mich 73, 92; 793 NW2d 587 (2009). Respondent points out that, because of his incarceration, he unable to participate in three hearings held during the proceedings below: (1) a review hearing held on August 14, 2019, (2) an emergency removal hearing held on November 8, 2019, and (3) a permanency planning hearing held on October 15, 2020. There is no dispute that respondent was incarcerated and did not personally participate in any of those hearings; however, he was represented by counsel at each hearing.

Regarding the August 14, 2019 review hearing, it appears that respondent's lack of participation may have been caused by the court being behind schedule. The record indicates that the court called respondent once the hearing had started and left a message there for respondent, but that respondent never appeared by telephone. This hearing was the first review hearing. It was noted at the hearing that respondent had received the parent-agency treatment plan and had signed and returned it. The caseworker also testified that, although she had not had an opportunity to confirm the information, respondent had provided a list of services he said he had completed. The caseworker also testified that respondent had not made any inappropriate comments during his conversations with the children.

On November 8, 2019, while respondent was still in prison, the children were removed and placed in a relative foster home with respondent's brother and the brother's wife. The children were removed because, although they were supposed to be placed with their maternal grandmother, their mother had actually moved them into her home with her boyfriend and his children. Petitioner learned of this violation on November 6 and moved to remove the children the following day. An emergency hearing was held on November 8. The referee at the hearing commented that "[t]here's no way we're gonna be able to get father on the phone."[4] However respondent's counsel was present at the hearing. Respondent's actions were not the subject of, or the reason for, the hearing. Instead, the entire issue was whether in light of recent developments, the children's placement was dangerous for them.

The last hearing that respondent did not attend was a combined review and permanency planning hearing held on October 15, 2020. At the beginning of the hearing, it was noted that respondent had been arrested three days earlier for parole violations and was in the Sanilac County Jail. There is no mention on the record of any attempt to secure respondent's presence by phone. The caseworker's report at this hearing was not favorable to respondent. The caseworker stated that respondent was hard to work with, had positive drug screens, had not cooperated in providing proof of income or conducting a home assessment, had not participated in parenting classes or

---

[4] MCR 2.004(C) requires that notice of at least seven days be provided to a prison facility to facilitate telephonic communication.

-6-

substance-abuse treatment, and had not provided signed releases for medical health services. Respondent was represented by counsel at this hearing.

Respondent has not demonstrated, to the extent there was any error in conducting these hearings in his absence, that any such error affected his substantial rights. The first hearing was held early in the proceedings and the referee received generally favorable information about respondent. The second was an emergency matter that was unrelated to respondent's conduct. And with regard to the final hearing, respondent has failed to show how his failure to appear at this hearing had an appreciable effect on the proceedings, particularly considering that respondent was represented by counsel. Respondent had the opportunity at the termination hearing to refute the caseworker's testimony, but instead admitted to being hostile and uncooperative with her and to not complying with his treatment plan.

Respondent also argues that MCR 2.004(F) was violated. MCR 2.004 requires the party seeking an order regarding a minor child to take steps to facilitate communication with an incarcerated prisoner. MCR 2.004(B). However, this court rule only applies to parties "incarcerated under the jurisdiction of the Department of Corrections." MCR 2.004(A)(2); see also *In re BAD*, 264 Mich App 66, 74-75; 690 NW2d 287 (2004). Because respondent was in the Sanilac County Jail, he was not under the jurisdiction of the Michigan Department of Corrections (MDOC) at the time of the October 15, 2020 hearing. Moreover, MCR 2.004(F) specifically exempts the facilitation requirements if "immediate action is necessary on a temporary basis to protect the minor child." The emergency hearing on November 8, 2019 would appear to qualify for that exemption, for the reasons discussed.

With regard to the August 14, 2019 review hearing, although respondent was under MDOC's jurisdiction at the time, the record shows that petitioner and the court took the necessary steps to procure respondent's attendance at that hearing. An order was entered on August 5, 2019, for the Department of Corrections to allow respondent to participate via telephone at the August 14 hearing. At that hearing, the court was running approximately 40 minutes late, but immediately called respondent's prison when the hearing began and left a message. It is not clear what else could have been done to secure respondent's participation that day. Because respondent failed to raise the issue in the trial court, the underlying reasons for his absence were never fully explored or provided. Under these circumstances, it is far from clear that MCR 2.004(F) was violated.

In any event, assuming there was a technical violation of respondent's due-process rights at one or more of the hearings, respondent cannot show that the results of the proceedings would have been any different had a violation not occurred. Respondent does not dispute that, except for the three hearings mentioned, he was able to participate in the remaining hearings throughout this case including, most importantly, all hearings on the supplemental petition to terminate his parental rights. Therefore, this case is distinguishable from *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010), in which the father did not participate at all during "the crucial, year-long period during which the court was called upon to evaluate the parents' efforts and decide whether reunification of the children with their parents could be achieved." *Id*. at 155. Indeed, the father in *Mason* "was practically excluded from almost every element of the review process." *Id*. By contrast in this case, respondent was able to participate in the vast majority of the proceedings, and the isolated instances in which his participation was not secured were unlikely to have resulted in prejudice against him. *Carines*, 460 Mich at 763. We find no plain error.

-7-

## IV. STATUTORY GROUNDS FOR TERMINATION

Respondent also argues that the trial court erred by finding that there were statutory grounds to terminate his parental rights. We disagree.

We review for clear error a trial court's determination that a statutory ground for termination has been proven by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake was made. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

A trial court must terminate a parent's parental rights if it finds that a statutory ground under MCL 712A.19b(3) has been established by clear and convincing evidence and that termination is in the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In this case, trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Regarding MCL 712A.19b(3)(c)(*i*), it is undisputed that more than 182 days had passed since the initial dispositional order. The issues that led to adjudication were respondent's incarceration and his history of domestic violence. Although respondent was paroled for a portion of the proceedings, he was again incarcerated by the time of the termination hearing. Moreover, the record shows that, although respondent completed some services while in prison related to his

repeated commission of domestic violence, he made no effort to engage with or benefit from any similar services once out of prison. The trial court did not clearly err by concluding that respondent's criminality and history of domestic violence remained unaddressed. *Ellis*, 294 Mich App at 33.

The trial court also did not clearly err by finding that clear and convincing evidence supported termination of respondent's parental rights under §§ 19b(3)(g) and (j). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *White*, 303 Mich App at 710. The evidence was overwhelming that respondent did not participate in and benefit from his service plan; in fact, the record shows that respondent failed to comply with nearly every requirement apart from visitation, and even had several unexcused absences in that area. Although respondent did complete an in-patient substance abuse program, he did not benefit from it; a mere three weeks later respondent was again using controlled substances and was arrested for parole violations.

Although respondent testified at the termination hearing that he was a "changed" person after beginning medication, the trial court did not clearly err by finding that he would not be able to provide proper care and custody within a reasonable time considering the children's ages. Respondent even admitted that he would need "some clean time" before being able to provide care and custody for the children. Notably, he did not specify how much "clean time" would be needed. But with the children having already been under the trial court's jurisdiction for 21 months, and considering respondent's past history of substance abuse and his failure to participate in other services that were offered, the trial court did not clearly err by finding that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the children's ages. MCL 712A.19b(3)(g). Similarly, respondent's failure to comply with a treatment plan is evidence that the children would be harmed if returned to him. *White*, 303 Mich App at 711. Respondent's failure to comply with the service plan also support the trial court's decision to terminate his parental rights under § 19b(3)(j).

## IV. BEST-INTEREST DETERMINATION

Respondent also argues that the trial court clearly erred by determining that termination of his parental rights was in the children's best interests. We disagree. We review for clear error a trial court's best-interest determination. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

As discussed, once a trial court has found that there are statutory grounds to terminate parental rights under MCL 712A.19b(3), the court must terminate the parent's parental rights if it is in the child's best interests. *White*, 303 Mich App at 713. In making this best-interest determination, "the court may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "[T]he preponderance of the evidence standard applies to the best-interest determination." *Moss*, 301 Mich App at 83.

The trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. The trial court noted how respondent's previous attempts at

abating his substance abuse and criminality had failed, and that it was not in the best interests of the children to have to wait indefinitely for respondent's rehabilitation. The trial court further noted the emotional impact of respondent's physical abuse of JM, which had resulted in JM requiring trauma-focused therapy. Respondent does not specifically dispute these findings, but argues that the bond he has with the children and the fact that the children were in relative placement is enough to tip the evidentiary balance in his favor. We disagree. The trial court considered that the children were placed with relatives and acknowledged that this factor weighed against terminating respondent's parental rights. However, such placement does not preclude a court from finding that termination is in a child's best interests. *Olive/Metts*, 297 Mich App at 43. The trial court was required to explicitly address this factor in its analysis, *id*. at 43-44, which it did. The trial court also recognized that there was a bond between respondent and the children. However, the trial court found that despite this bond, the children's interests would be better served if respondent's parental rights were terminated.

We are not left with a definite and firm conviction that the trial court made a mistake. The court reasonably gave greater weight to the children's needs for permanency, stability, and finality. Additionally, the trial court properly considered the advantages of the foster home over respondent's home. See *id*. at 42. At the time of the best-interest hearing, the children had been under the trial court's jurisdiction for 24 months and had been living with the foster parents for 18 months. The fact that the children had been placed in a stable and loving home and that the children would be provided with continued stability and permanency supports the trial court's conclusion that termination of respondent's parental rights was in their best interests. Additionally, the trial court noted that the children were extremely bonded to the foster family and had "become part of their family." The children's foster mother testified that the children had become "part of the family," with their other children treating them as siblings. The children were included in all the family activities, including traveling, visiting relatives, swimming, and other recreational activities. Moreover, the children themselves had expressed that, while they loved their parents, they felt safest in their foster home. The children's foster parents also testified that, despite being related to respondent by blood and marriage, respondent had expressed a great deal of anger and hostility toward them, to the point where they did not feel safe supervising his visits with the children.

Reviewing the totality of the evidence, we are not left with a definite and firm conviction that the trial court made a mistake by finding that termination of respondent's parental rights was in the children's best interests. We therefore conclude that the trial court did not err in that determination. *Olive/Metts*, 297 Mich App at 40.

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Thomas C. Cameron

-10-